MICHAEL SMITH ATTORNEY PLLC (Bar No. 13365)
1896 NORTH 1120 WEST
PROVO, UTAH 84604
(801) 373-4000
smithlaw.pro@gmail.com

ATTORNEY FOR PLAINTIFF STEVE GOLAS


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH


| | |
|---|---|
| STEVE GOLAS, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> JASON BOOTHE, in his official and ) individual capacities; CINDY L. COLE, ) in her official and individual capacities; ) D. McGARREN FLACK, in his official ) and individual capacities; TRAVIS ) ROSENBERG, in his official and ) individual capacities; BLAIR BARFUSS, ) in his official capacity; JULI NIELD, in ) her individual capacity; LAURA EVANS, ) in her individual capacity; BRITTANY ) POLLASTRO; and DOES 1 to 25, ) <br><br> Defendants. ) <br> _____ ) | CASE NO. 4:20-cv-00008-DN <br><br> COMPLAINT FOR INJUNCTIVE RELIEF; DAMAGES; AND PUNITIVE DAMAGES ARISING OUT OF VIOLATION OF THE FOURTEENTH AMENDMENT AND INTENTIONAL DEPRIVATION OF CIVIL RIGHTS <br><br> Judge David Nuffer |


Plaintiff STEVE GOLAS ("Plaintiff"), by and through his attorney, alleges the

following against the above named and unnamed defendants:

   1.  Plaintiff Steve Golas is an individual residing in Washington, Utah and

employed by Dixie State University, a Utah public educational institution, as its Head Women's Soccer Coach beginning April 15, 2019, pursuant to a written agreement.

2.  Defendant Jason Boothe is an individual believed to be residing in Washington County, Utah and is employed by Dixie State University, a Utah public educational institution, as its Athletic Director.

3.  Defendant Cindy L. Cole is an individual believed to be residing in Washington County, Utah and is employed by Dixie State University, a Utah public educational institution, as its Assistant General Counsel and Title IX and Civil Rights Director.

4.  Defendant D. McGarren Flack is an individual believed to be residing in Washington County, Utah and is employed by Dixie State University, a Utah public educational institution, as its Title IX Deputy and an Associate Professor.

5.  Defendant Travis Rosenberg is an individual believed to be residing in Washington County, Utah and is employed by Dixie State University, a Utah public educational institution, as its Executive Director of Human Resources.

6.  Defendant Blair Barfuss is an individual believed to be residing in Washington County, Utah and is employed by Dixie State University, a Utah public educational institution, as its Chief of Police.

7.  Defendant Juli Nield is an individual believed to be residing in Washington County, Utah and is employed by Dixie State University, a Utah public educational institution, as an Assistant Women's Soccer Coach.

8.  Defendant Laura Evans is an individual believed to be residing in Washington County, Utah and is employed by Dixie State University, a Utah public educational

institution, as an Assistant Women's Soccer Coach.

9.  Defendant Brittany Pollastro is an individual believed to be residing in Washington County, Utah who is employed by Intermountain Healthcare and is assigned by Intermountain Healthcare  to provide first aid and healthcare services to students on the Dixie State University Women's Soccer Team.

10.  Does 1 to 25 are other individuals or entities that may be liable to Steve Golas, but whose names and identities have not yet been ascertained.

11.  This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1331 and 28 U.S.C. §1343(3) because plaintiff's claims raise federal civil rights issues.

12.  The basis for this action is that, by using their authority or connections with Dixie State University, each defendant falsely and without good cause defamed plaintiff, assisted in or caused the state agency to find him guilty of Title IX retaliation without due process, and used fraudulent means to cause Dixie State University to suspend plaintiff from his coaching position and take steps to terminate his position of prestige without due process, thereby depriving plaintiff of substantial liberty and property interests under the Fourteenth Amendment to the U.S. Constitution, in violation of 42 U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1986.


## FIRST COUNT

(For injunctive relief against Cole, Flack and Boothe in their official capacities)

13.  In early 2019, plaintiff Steve Golas entered into a written Head Coach Employment Agreement with Dixie State University, a Utah public educational

3

institution, for five seasons beginning on April 15, 2019 and continuing until on or about December 15, 2023, subject to suspension or termination prior to the termination date only for cause, as defined in the Agreement. This employment contract provided to plaintiff substantial and valuable fundamental property and liberty interests which, under the Fourteenth Amendment to the United States Constitution, could not be terminated without due process of law.

14.   Plaintiff performed his duties as Head Women's Soccer Coach in a fully satisfactory and even exemplary manner, qualifying for financial bonuses under his agreement by leading the team to a NCAA regional appearance, a NCAA regional championship, and working to assist the student athletes to obtain a team grade point average (GPA) of 3.6934 during the fall term. The soccer team has been invited to join the Western Athletic Conference along with the other university sports teams.

15.   Plaintiff had and has constitutionally protected property interests in his five year employment agreement with Dixie State University and future employment opportunities.

16.   Plaintiff had and has constitutionally protected liberty interests in his good name, reputation, honor, integrity, and pursuit of future employment opportunities.

17.   Dixie State University has at all times relevant hereto had a University Policy 154 entitled "Title IX, Harassment and Nondiscrimination", which purports to adhere to federal and state civil rights laws prohibiting discrimination in public universities. The policy provides for resolution using a "Equity Resolution Process" administered by a school Title IX Office, with defendant Cindy L. Cole as Director and defendant D.

McGarren Flack as Deputy. Cindy L. Cole is also Assistant Legal Counsel for DSU.

18.   Plaintiff alleges that University Policy 154 and the Equity Resolution Process used by Dixie State University, as written and as enforced by the school Title IX Office, fail to provide constitutional minimums of due process to individuals accused of violating University Policy 154, including (1) notification of charges; (2) opportunity for a hearing; (3) access to evidence and names of witnesses, (4) representation by legal counsel, (5) a hearing before an impartial tribunal, (6) the opportunity to present evidence and witnesses and cross-examine adverse witnesses, (7) a decision based on evidence and findings, (8) a transcript or record of the hearing, and (9) the right to a meaningful appeal.

19.   Defendants Cindy L. Cole and D. McGarren Flack, in their official capacities with Dixie State University, should therefore be enjoined by this Court from using the specified Equity Resolution Process to enforce University Policy 154 against plaintiff or against any other faculty, administrator, staff, student, guest, or visitor to deprive such person of substantial fundamental property or liberty interest.

20.   On or about October 1, 2019 defendant Cindy Cole notified plaintiff Steve Golas verbally that she had received a report from defendant Juli Nield, a part-time assistant coach with the women's soccer team, that plaintiff was "ignoring her during practices."  On October 23, 2019 Cindy Cole told plaintiff verbally that he needed to communicate more with Juli Nield, since he was her supervisor. Plaintiff asked Ms. Cole to assign a mediator to assist him in improving communication with his staff, but she did not do so.

21.  On January 2, 2020 defendant Cindy Cole, acting in her capacity as Civil Rights and Title IX Director of Dixie State University, sent plaintiff a document titled "Title IX Outcome Notice", which stated that she found him guilty of violating University Policy 154's prohibition against retaliation, and that she rejected plaintiff's own complaint of religious discrimination. The written Notice informed plaintiff for the first time that (1) Ms. Cole had personally completed a formal investigation into allegations that he "retaliated" against female staff members Juli Nield, Laura Evans, and Brittany Pollastro; (2) that Ms. Cole had private meetings or reports from one or more of these defendants on 10/2/19, 10/9/19, 10/24/19, 11/5/19, 11/13/19, 11/14/19, 11/15/19, 12/4/19, 12/5/19, and 1/2/19; (3) that Ms. Cole received an email from an unnamed student on 11/15/19; and (4) that he could appeal her decision if he wished.

22.  At the end of the day on January 7, 2020 defendant Cindy Cole sent plaintiff an email notice changing the "Title IX Outcome Notice" to "Investigation Summary" and giving all parties one week to respond to the summary in writing. This "Investigation Summary" consisted of only vague assertions that by communicating with his staff through text message and when they asked him questions, plaintiff had been humiliating and disrespectful to them. It included as fact a false statement that the staff was not invited to pre-game meals, when plaintiff had on his phone all of the text messages he had sent inviting them to the meals. The email did not provide plaintiff with notes or transcripts of any of Ms. Cole's interviews with defendants, it gave false descriptions of her conversations with plaintiff, gave plaintiff no access to evidence against him and no opportunity to cross-examine adverse witnesses, and no right to a

hearing. Ms. Cole did not interview any witnesses other than the complainants.

23.   Title IX Equity Resolution Process procedure 6.11.2 specifically prohibits plaintiff from having an attorney or other adviser to act on his behalf, to make any presentation, or to even speak unless invited to do so by the Title IX Director. Plaintiff's counsel did submit a written Response to Cindy Cole on January 15, 2020 which denied all of the vague allegations, provided contrary evidence, stated the names of favorable witnesses who had not been interviewed, produced the five text messages disproving the allegation that staff had not been invited to team meals, and citing DSU Policy 154 Addendum 6 as evidence that the alleged conduct by plaintiff, even if true, would not constitute intentional retaliation under federal law or under university policy.

24.   On January 21, 2020 defendant Cindy L. Cole sent plaintiff her Final Investigation Report, which was almost verbatim the same as her Title IX Outcome Notice and Investigation Summary earlier.  Plaintiff's written response was referred to in footnote 1 on pages 2-3, but Ms. Cole gave no weight to the submitted text messages, and countered plaintiff's claims by having a conversation with defendant Jason Boothe and including additional false statements by the complainants without giving plaintiff any opportunity to respond.  Title IX Director Cindy L. Cole, as sole investigator and evaluator, justified her ruling that plaintiff was guilty by relying on her own evaluation of his credibility, disbelieving plaintiff because "he did not acknowledge any fault on his part and did not take responsibility for his actions".  Without holding a hearing or interviewing impartial witnesses, Ms. Cole determined that plaintiff was guilty because he did not admit to her that he was guilty, and found the complainants were credible

because "they attempted to make the situation better".

25.   Without allowing any further input or providing for any hearing by an impartial tribunal, defendant Ms. Cole submitted her Final Report to her subordinate, Title IX Deputy D. McGarren Flack, for a Resolution Administrator Report.  On January 28, 2020, defendant Flack, in his official capacity as an agent of Dixie State University, issued his finding that Coach Golas was guilty of retaliating against three members of his staff for making a claim of sexual harassment against him (which was unfounded). His official decision was expressly based upon the following evidence and findings: "I conclude that notifications, job duties, and interactions between Golas and the Complainants negatively changed after the initial Title IX investigation..."  There never was any proof of any change in job duties or notifications, and any difference in "interactions" (i.e. talking or texting) was disputed and inconsequential.

26.   Plaintiff has filed an Appeal of the Resolution Administrator Report, but the written policies and practices specified in Rule 6.13 of school's Title IX Equity Resolution Process are so tilted against plaintiff's interests as to be without any value to pursue.  These include the following: (a) The Title IX Director (defendant Cole) selects the three members of the panel, who are all her subordinates in the Title IX Office; (b) Appeals are only allowed if there was a procedural error or omission, if there is new evidence that was unknown or unavailable previously, or if the university doesn't allow the sanctions imposed; (c) plaintiff bears the burden to prove that an appeal is allowed; (d) The panel has sole discretion to decide whether an appeal is allowed; (e) The appeals panel must defer to the original decision and can only change the finding if

there is clear error; (f) Appeals are confined to reviewing the investigation record and do not allow for a hearing; (g) the original ruling cannot be changed if the Appeals Panel believes the underlying decision was wrong; and (h) Appeals based upon new evidence are remanded to the investigator (Cindy Cole) for consideration and ruling.

27.   Inasmuch as plaintiff is a male coach hired by universities to coach female soccer teams, and inasmuch as all universities are required to be in compliance with Title IX of the United States Code, the existing finding by defendants Cindy Cole, D. McGarren Flack and Jason Boothe that plaintiff is guilty of a violation of sexual harassment and retaliation laws is a death sentence to plaintiff's twenty-year successful college coaching career.  It is unconscionable that defendants could base such a finding on fraudulent and flimsy rumor, without the most minimal procedural due process rights being afforded, without fair notification or a full investigation, by denying plaintiff any opportunity for a hearing before an impartial tribunal, representation by counsel, the right to cross-examine adverse witnesses, and a total lack of findings based upon any degree of evidence and proof.

28.   The aforementioned conduct by defendants Cindy Cole, D. McGarren Flack, and Jason Boothe in their capacity as administrative officials of Dixie State University, constituted state action and infringed on the constitutionally protected property and liberty interests of plaintiff Steve Golas, without due process, in violation of the Fourteenth Amendment to the United States Constitution.

29.   An award of money damages by itself will not protect plaintiff from the total loss of his current five-year employment contract and the inability of him to ever again

obtain employment in his chosen career anyplace in the country. Plaintiff therefore requests the Court to issue injunctive relief to compel defendants Cole, Flack, and Boothe to do all of the following: (a) immediately cancel the Title IX Office findings against plaintiff with prejudice; (b) permanently seal or destroy all records of the investigation, findings, and rulings against plaintiff; (c) permanently cancel the pending appeal; (d) provide to plaintiff and to all other individuals or institutions that have been notified of the investigation that the investigation and any findings by the Title IX office were without basis, in violation of plaintiff's constitutional rights, and are to be considered without validity and void; (e) and further to enjoin said defendants Cole, Flack, and Boothe from accepting, acting upon, processing, investigating, holding hearings, ruling on, or handling appeals of any complaints or allegations of discrimination, harassment, or retaliation against any employee, staff member, or student of Dixie State University until new procedures are submitted to and approved by the Court which are in full compliance with constitutional rights to due process and fairness.

<u>SECOND COUNT</u>

(For injunctive relief against Boothe, Rosenberg, and Barfuss in their official capacities)

30.  Plaintiff realleges paragraphs 1 through 16 of this Complaint as if restated in full at this place.

31.  On February 10, 2020 defendant Jason Boothe, in his official capacity as Athletic Director of Dixie State University, placed plaintiff Steve Golas on Administrative

Leave from his position as Head Women's Soccer Coach for Dixie State University, barred him from conducting or participating in soccer practices with his soccer team, excluded him from all Dixie State University premises, precluded him from communicating with any University faculty, student or staff members, and required him to return University keys, access cards, computer, and other University property.

32.   This action was taken by a simple email issued to plaintiff which did not include a notification of charges against him, access to evidence or names of witnesses, time to prepare a rebuttal to charges, without a hearing before an impartial tribunal or any process for such a hearing, and without any minimal due process right which is guaranteed to plaintiff by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. §1983. The letter was mailed to plaintiff and copied to defendant Travis Rosenberg as Executive Director of Human Resources for Dixie State University and to defendant Blair Barfuss as Chief of Police for Dixie State University, in order to ensure that plaintiff would be prevented from going on campus, or be arrested if he attempted to do so.

33.   Defendant Jason Boothe has notified plaintiff that he is prepared to terminate plaintiff's employment with Dixie State University, to allege that it is for Cause, and to refuse to pay plaintiff any salary or benefits, even if plaintiff brings legal action. Plaintiff's attorney has been notified by legal counsel for Mr. Boothe and the University that they contend that plaintiff's Head Coach Employment Agreement allows Mr. Boothe to suspend or terminate plaintiff's employment prior to its stated termination date of December 15, 2023 at his discretion, and that such a termination is not subject to the

appeal procedures otherwise available to University staff.  Mr. Boothe also contends

that he has no contractual obligation to use progressive discipline or to otherwise

provide plaintiff Coach Steve Golas with any due process rights or hearing.

34.   The suspension of plaintiff without notice or cause on February 10, 2020,

and the pending threats by Mr. Boothe and his counsel to terminate plaintiff's

employment without hearing or progressive discipline, constitute current conduct and

the imminent threat by an agent of the State of Utah to deprive plaintiff of current

existing property rights, including his right to employment, to substantial pay and

benefits, to his excellent reputation built on a lifetime of training and professional

performance, and to his ability to obtain future employment and compensation.

35.   The aforementioned conduct and threatened imminent conduct by defendant

Jason Boothe in his capacity as Athletic Director of Dixie State University, constitutes

state action which has infringed and will hereafter infringe on the constitutionally

protected property and liberty interests of plaintiff Steve Golas, without due process, in

violation of the Fourteenth Amendment to the United States Constitution.

36.  An award of money damages by itself will not protect plaintiff from the

current and future injuries he is suffering by being totally excluded from his students and

the university campus and precluded from performing his professional duties and likely

losing without cause or due process his current five-year employment contract. Plaintiff

therefore requests the Court to issue injunctive relief to compel defendant Boothe to do

all of the following: (a) immediately rescind the Administrative Leave given to plaintiff

Coach Golas;  (b) allow plaintiff to immediately return to his coaching position at Dixie

State University, to communicate with his staff, students, associates, and others at the university; and return to him all university property previously provided to him; (c) notify defendants Travis Rosenberg and Blair Barfuss that plaintiff is reinstated and shall not be prevented from entering or moving around campus freely; and (d) enjoin said defendant Boothe from taking any further actions to suspend plaintiff, terminate his employment, limit his freedom to perform all of his duties as Head Soccer Coach, fail to pay plaintiff his full salary, benefits, and bonuses; take any disciplinary action against plaintiff whatsoever based upon the false, slanderous, and unconstitutional actions taken against him by the Dixie State University Title IX Office; or threaten to take any such action without first providing plaintiff with his constitutional rights to due process, including complete written notice of the claimed reason for said proposed action, the right to legal counsel,  providing him access to all allegations and evidence considered against him, providing him with time to adequately prepare his defense; and allow him a full evidentiary hearing before an impartial tribunal not under Mr. Boothe's control or concerning any individual from the Title IX Office.  Should defendant fail to provide plaintiff with all of these rights prior to taking any disciplinary action against him, the Court is requested to order Mr. Boothe and Travis Rosenberg to pay to plaintiff all benefits to which he is entitled under his Head Coach Employment Agreement for termination by the University without cause.


## THIRD COUNT

(For compensatory and punitive damages against defendants Cole, Nield, Evans,

Pollastro, Flack, Boothe, and Rosenberg in their individual capacities)

37.  Plaintiff realleges paragraphs 1 through 28 of this Complaint as if restated in full at this place.

38.  In taking the actions alleged in paragraphs 1 through 28 of this Complaint, defendants Cindy L. Cole, D. McGarren Flack, and Jason Boothe, as individuals, knew and intended that the actions they took against plaintiff Steve Golas on behalf of Dixie State University, a state educational institution, were likely to, and did, in fact, wrongfully defame and slander plaintiff, and failed to provide him with the minimal due process rights to which he was entitled as a contractual employee of Dixie State University and a citizen of the United States, thereby depriving him of his rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution.

39.  Cindy L. Cole, being a trained attorney licensed by the state of Utah, knew in her individual capacity that the charges of retaliation which she brought against plaintiff in her Title IX investigation did not violate University Policy 154 and were unconstitutionally vague and totally dissimilar from the examples of retaliation under said policy.

40.  Having received written notice from plaintiff's legal counsel that plaintiff had substantial incontrovertible proof that the Complainants were falsely claiming that they were not notified of team meals, and knowing that she had not interviewed unbiased witnesses, including Assistant Coach Paul Kimbrough, who had been present when plaintiff had multiple meetings and discussions with the Complainants, Cindy L. Cole nonetheless completed her investigation without obtaining or considering such evidence

and without providing plaintiff with information or the opportunity to cross-examine opposing witnesses or present evidence before an impartial tribunal.

41.  As an attorney, as Assistant General Counsel for Dixie State University, and as the school's Title IX Director, defendant Cole knew that the Equity Resolution Process which she enforced did not provide plaintiff or any accused person with the procedural due process to which he was entitled under the United States Constitution. She knew and intended that the process entitle her to conduct a sham investigation that met her personal desires and reached her desired outcome, intentionally keeping all attorneys other than herself out of the entire process, keeping to herself the sole right to interpret and apply University Policy 154 the way she wanted, and ensuring that all other members of the Title IX Office were trained, supervised, and controlled by her. With this knowledge, Cindy L. Cole intentionally and for her own personal purposes, refused to provide plaintiff with notice of what conduct was required of him, ruled him untrustworthy because he did not admit to violating her interpretation of her own policy, and lied in her statements and written reports to defame him.

42.  Defendant Cole also knew and intended that, because of her prior association with Complainants, with whom she personally identified as local residents, as women and as members of the same church to which she belonged, they would prevail, and Coach Steve Golas would be defamed and slandered in a manner that would destroy his career, allow him to be terminated by DSU for cause, or force him to resign from the university in disgrace.

43.  As a "trained" Title IX Deputy, defendant D. McGarren Flack knew that the

investigation of plaintiff was perfunctory, that it did not include relevant unbiased witness interviews, and, having reviewed the letter from plaintiff's counsel, he knew that plaintiff had not received due process or any opportunity to a fair hearing, knew that he was relying solely on his boss's biased statement of credibility, and he intentionally prepared his Resolution Administrator Report without making any factual findings or providing any justification for his finding that plaintiff was guilty of wrongful "retaliation".

44. To assist the Title IX sham investigation and "execution" of Coach Steve Golas, defendant Jason Boothe knowingly gave defendant Cole false information about his instructions to Steve Golas and Paul Kimbrough, manufactured a false hearsay statement from Wendi Bulkley, and suspended plaintiff without notice or cause as alleged herein, prohibiting him from speaking with any witnesses who were favorable to him, and from receiving their support or encouragement.

45. Each of these actions were taken by defendants Cole, Flack, and Boothe for their own purposes and with the intent to deprive plaintiff of his rights, privileges, or immunities secured by the United States Constitution. Since they did directly result in the state action which deprived plaintiff of his good name, reputation, opportunity for future employment, and are likely to deprive him of his current employment, each defendant violated 42 U.S.C. §1983 and are liable to plaintiff for all damages suffered.

46. Beginning in September of 2019, defendants Cole, Flack, and Boothe, in their individual capacities, conspired with defendants Juli Nield, Laura Evans, and Brittany Pollastro, and each of them, to coordinate and provide repeated false testimony against plaintiff, accusing him of vague subjective conduct and intentions which

produced no demonstrable evidence and had no witnesses, but which was intentionally difficult for plaintiff to disprove, especially because there were no dates or specifics given to him, and plaintiff had no opportunity to investigate or examine defendants.

47.  As part and parcel of this conspiracy, Ms. Cole made frequent inquiries to defendants Nield, Evans, and Pollastro as to whether their communication with plaintiff during each subsequent practice had improved.  According to their plan and conspiracy, the defendants responded to each request with "no", and Ms. Cole recorded each "no" as a new and separate rule violation by plaintiff.  This conspiracy continues to the present, as defendant Boothe may have used these repeated violations as an excuse for suspending plaintiff on February 10, 2020.

48.  These defendants participated in this conspiracy as alleged above with the agreed purpose and intention of defaming plaintiff, using orchestrated accusations to meet Cindy Cole's interpretation of University Policy 154, allowing her to make findings of policy violations against him without proof or due process, and obtaining false grounds to justify the destruction of plaintiff's reputation, the suspension and termination of plaintiff's employment, or forcing him to resign to save his reputation.

49.  Each of these actions were taken by defendants Nield, Evans, Pollastro, Cole, Flack, and Boothe for their own purposes and with the intent to deprive plaintiff of his rights, privileges, or immunities secured by the United States Constitution. Since their conduct did directly result in the state action which deprived plaintiff of his good name, reputation, opportunity for future employment, and are likely to deprive him of his current employment, each defendant violated 42 U.S.C. §1985(3) and are liable to

plaintiff for all damages suffered.

50. Defendants Cole, Flack, Boothe, and Rosenberg, and each of them, had knowledge that plaintiff was being defamed and deprived of his rights, privileges, or immunities secured by the United States Constitution, and that such deprivation was occurring without minimal due process. Each of these defendants knew that actions were being taken which would likely result in the destruction of plaintiff's excellent reputation, his suspension, termination, or resignation from the university.

51. These defendants, and each of them, knew of the wrongful deprivation of plaintiff's rights because they were part of the conspiracy, or they were recipients of either (a) letters from plaintiff's attorney, (b) the Title IX Outcome Notice, Investigation Report, Final Investigation Report, and Resolution Administrator Report prepared by the Dixie State University Title IX Office, and/or (c) the Notice of Suspension issued to plaintiff by Jason Boothe on 2/10/20. Each defendant was in a position of authority by which he or she could have prevented the commission of these wrongful acts by the other defendants or by the conspiracy, but they each neglected or refused to do so.

52. Each of these actions were taken or not taken by defendants Cole, Flack, Boothe, and Rosenberg for their own purposes, and such neglect or refusal to act resulted in the deprivation of plaintiff's rights, privileges, or immunities secured by the United States Constitution. Since their conduct allowed the state action which deprived plaintiff of his good name, reputation, opportunity for future employment, and are likely to deprive him of his current employment, each defendant violated 42 U.S.C. §1986 and are liable to plaintiff for all damages suffered.

53.  As the direct result of the above alleged conduct by defendants Cole, Nield, Evans, Pollastro, Flack, Boothe, and Rosenberg, each and every one of them is liable to plaintiff for all of his damages, which are alleged to include the following:

        (a) Damages for loss of his current employment in the sum of $360,000;

        (b) Damages for loss of his future employment in the sum of $1,000,000.

        (c) Damages for damage to his reputation in the sum of $1,000,000;

        (d) Damages for emotional distress in the sum of $1,000,000;

        (e) Attorney Fees in the sum of $300,000; and

        (f) Punitive damages against each defendant in the sum of $3,000,000.

54.  Each individual defendant acting in his individual capacity treated plaintiff with disdain and depraved willingness to violate his constitutional rights, and with wrongful intent and malice or with reckless disregard for the likelihood that their conduct and conspiracy would destroy plaintiff's good name, livelihood, and current and future employment, knowing and wanting to violate his constitutional rights while so doing. They are each therefore liable for punitive damages in the sum of $3,000,000.

WHEREFORE, plaintiff prays for relief against defendants as follows:

1.  For injunctive relief to compel defendants Cole, Flack, and Boothe to do all of the following: (a) immediately cancel the Title IX Office findings against plaintiff with prejudice; (b) permanently seal or destroy all records of the investigation, findings, and rulings against plaintiff; (c) permanently cancel the pending appeal; (d) provide to plaintiff and to all other individuals or institutions that have been notified of the

investigation that the investigation and any findings by the Title IX office were without basis, in violation of plaintiff's constitutional rights, and are to be considered without validity and void; (e) and further to enjoin said defendants Cole, Flack, and Boothe from accepting, acting upon, processing, investigating, holding hearings, ruling on, or handling appeals of any complaints or allegations of discrimination, harassment, or retaliation against any employee, staff member, or student of Dixie State University until new procedures are submitted to and approved by the Court which are in full compliance with constitutional rights to due process and fairness.

  2. For injunctive relief to compel defendant Boothe to do all of the following: (a) immediately rescind the Administrative Leave given to plaintiff Coach Golas;  (b) allow plaintiff to immediately return to his coaching position at Dixie State University, to communicate with his staff, students, associates, and others at the university; and return to him all university property previously provided to him; (c) notify defendants Travis Rosenberg and Blair Barfuss that plaintiff is reinstated and shall not be prevented from entering or moving around campus freely; and (d) enjoin said defendant Boothe from taking any further actions to suspend plaintiff, terminate his employment, limit his freedom to perform all of his duties as Head Soccer Coach, fail to pay plaintiff his full salary, benefits, and bonuses; take any disciplinary action against plaintiff whatsoever based upon the false, slanderous, and unconstitutional actions taken against him by the Dixie State University Title IX Office; or threaten to take any such action without first providing plaintiff with his constitutional rights to due process, including complete written notice of the claimed reason for said proposed action, the right to legal counsel,

providing him access to all allegations and evidence considered against him, providing

him with time to adequately prepare his defense; and allow him a full evidentiary

hearing before an impartial tribunal not under Mr. Boothe's control or concerning any

individual from the Title IX Office.  Should defendant fail to provide plaintiff with all of

these rights prior to taking any disciplinary action against him, the Court is requested to

order Mr. Boothe and Travis Rosenberg to pay to plaintiff all benefits to which he is

entitled under his Head Coach Employment Agreement for termination by the University

without cause.

3.  For judgment for compensatory and punitive money damages against

individual defendants Cindy L. Cole, Juli Nield, Laura Evans, Brittany Pollastro, D.

McGarren Flack, Jason Boothe, and Travis Rosenberg, jointly and severally, for the

sum of Six Million, Six Hundred and Sixty Thousand Dollars ($6,660,000.00), as set

forth in paragraph 53 above, plus court costs and additional relief as the Court deems

proper.


Dated: February 13, 2020

/s/ Michael Smith
Attorney for Plaintiff Steve Golas